LAND, J.
This is a suit for damages for an alleged malicious prosecution of the plain *579 tiff on a charge of the larceny of a belt, valued at $50, belonging to the defendant. The petition alleged that the prosecution was initiated by an affidavit made by one Joseph Hoch, assistant manager or superintendent, acting for and in behalf of the defendant company; that the petitioner was arrested on said affidavit, and incarcerated in the parish jail until the next day, when the said Joseph Hoch, having recovered the belt, ordered the petitioner be released from further confinement.
The petition alleged that he was greatly humiliated and outraged by the said arrest and incarceration, which caused him pains and sufferings in the full sum of $5,000.
The petition further alleged that the affidavit was made through malice and without probable cause, as the petitioner had always borne a good reputation, and had never been arrested in his life.
Defendant for answer, after pleading the general issue, specially denied that Joseph Hoch made any affidavit charging plaintiff with larceny, and further specially denied that said Hoch had any authority to represent the defendant in the matter complained of by the plaintiff, which was entirely beyond the scope of the employment of the said Hoch, and that his action in the premises was not taken either with respondent’s knowledge or consent.
The case was tried before the judge, who rendered judgment in favor of the plaintiff for the sum of $500 and costs. Defendant has appealed.
On October 1, 1912, Joseph Hoch was general foreman, and Robert A. Cushing was superintendent and executive officer, of the Indian Oil Refining Company.
On October 1,1912, Joseph Hoch signed an affidavit charging J. Hutter with the larceny of one roll of belting valued at $50. This affidavit purports to have been made before “Victor Ciutat, Judge.” A warrant was issued on this affidavit, and on the next evening or night, the plaintiff was arrested by two deputies, and locked up in jail, where he remained until the next day. Plaintiff testified that he “was confined with colored and white prisoners mixed” and was compelled to sleep “in a bed infected.”
The circumstances under which the affidavit was prepared and signed are set forth in the testimony of Mr. Ahrens, the law partner of the district attorney, who was absent at the time. This witness deposed, in substance, that on the night of October 1, 1912, Mr. Hoch came into his office, accompanied by two deputy sheriffs, and said that a roll of belting had been stolen, and he felt that if he could have John Hutter arrested, and then have a search warrant issued, and then have another party arrested, who he thought had the belting, he would be able to recover it.
Mr. Hoch inquired if he could have a warrant issued without preparing an affidavit, and Mr. Ahrens replied in the negative, and at once prepared the affidavit. Mr. Hoch signed the affidavit in his individual name, after having been told by Mr. Ahrens that it was not necessary to add the words “assistant superintendent.” The justice of the peace was not present, but signed the jurat later. Mr. Hoch made a second affidavit against another person at the same time, and warrants were issued on these affidavits. These warrants appear to have been blank forms which had been signed in advance by the justice of the peace. One of these warrants as filled in called for the arrest of the plaintiff. Mr. Ahrens testified positively that Mr. Hoch stated that he wanted to have the plaintiff arrested, and that while he was satisfied the plaintiff had not taken the belt, “he was. in cahoot with the party who did take it.”
Mr. Serpas, deputy sheriff, testified that Mr. Hoch told him that he wanted Bartnell and Hutter arrested, and a search warrant- *581 at the same time, to see if he could locate the belting in the house of either of them; that thereafter the three warrants issued, and that he started with Mr. Hoch to serve the warrants the same night, but the Indian Refinery automobile broke down, and another automobile, which they borrowed, after proceeding some distance ran against an obstruction, and was put out of commission. Mr. Hoch thereupon suggested that the night trip be abandoned, and that he would go down in the morning, and would ring up the deputy if anything turned up. After waiting some time the next morning,' and receiving no telephone message from Mr. Hoch, the deputy and another officer proceeded to the Indian Refinery to serve the warrants, and, on reaching that place, was told by Mr. Hoch that he had found the belting, and did not want to have Mr. Hutter arrested. The deputy replied that he had the warrant and was bound to serve it, and that Mr. Hoch would have to apply to the court for Hutter’s release. Whereupon the deputy arrested the plaintiff and lodged him in jail. The same deputy testified that Mr. 1-Ioch told him that he was acting for the Indian Refinery Company.
Mr. Fritz Hahn, then a police officer, testified that Mr. Hoch telephoned him to bring a blank affidavit and a blank search warrant, and that ho replied that he could not do that, and told him to come on up and prefer the charges, that he asked Mr. Hoch what was the matter, and he said he wanted to have two men arrested; that Hoch came on up, and Mr. Ahrens came along and made the affidavit out. The witness further testified that Mr. Hoch told him that he wanted to have John Hutter and Vic. Bartnell arrested.
Mr. Nunez, the district attorney, testified that the affidavit in question was signed by the justice of the peace after the date of the jurat, and we gather from the testimony of that officer that the justice of the peace, on account of his continued sickness, had . acquired the bad habit of signing blank affidavits and warrants. This convenient custom seems to have been known to Mr. I-Ioch.
Mr. Hoch testified that he had never made any affidavit against Hutter, the plaintiff; that he made an affidavit against Bartnell, and signed a blank affidavit, “in case the goods were found in Hutter’s possession I would arrest him.”' Hoch admitted his signature to the affidavit against Hutter, but insisted it was in blank when he signed it. Hoch testified that he opposed the arrest of Hutter because he had not preferred an affidavit against him, and told the two officers that he did not prefer any charge against Hutter “unless they filled out that blank affidavit against him.” It appears that Hoch did not change his mind as to the arrest of Hutter until the confession of Bartnell and the restoration of the stolen goods had shown that Hutter was innocent of the ■ charge of larceny preferred against him.
The defense is a repudiation of Hoch’s agency beyond the procurement of warrants, to search the houses of Bartnell and Hutter. So Mr. Cushing, the superintendent, testified. So does Hoch, but, unfortunately for the latter, he admits that he made an affidavit for the arrest of Bartnell and the evidence shows that he signed an affidavit for the arrest of Hutter. Mr. Ahrens testified that no search warrant was issued with reference to I-Iuttef, but one did issue to search the premises of a “fellow” at Mereauville.
The evidence shows that before I-Ioeh left the plant of the defendant company he telephoned Policeman I-Iahn that he wanted to arrest Hutter and Bartnell. I-Ioch also told Deputy Sheriff Serpas, when he met him, that he wanted both men arrested, and also wanted a search warrant at the same time to see if he could locate the belting in either one of the houses. He made substantially the same statement to Mr. Ahrens, who was *583 acting for the district attorney. It is impossible to reconcile Hoch’s declarations and actions in the premises with the hypothesis that his mandate was restricted to the procuring of search warrants.
Mr. Cushing admits that he sent 1-Ioch to the Stock Landing to report to the authorities, but at the same time asserts .that his instructions to Hoch were limited to search warrants. Mr. Cushing must have known that such a report would necessarily embrace all the facts connected with the theft of the belting, and the participation of Hutter and Bartnell in the commission of the crime, or in the concealment of the stolen goods. The report as made by Hoch connected Hutter with the theft of the property, and on I-Ioch’s affidavit a warrant issued for Hutter, under which he was arrested and incarcerated in the parish prison. Cushing’s alleged private instructions to Hoch did and could not control the prosecution of Hutter on the report which Hoch was authorized to make.
The cases cited by counsel for defendant have no application to the case at bar, where the arrest was the legal consequence of the report which the foreman was authorized to make. '
Judgment affirmed.
PROVOSTY, J., being absent on account of 'illness, takes no part.